THE STATE OF KANSAS v. AL. START.

No. 11305.

JURORS— *Qualifications*— *Opinions Previously Formed.* Persons called as jurors who have heard and read detailed accounts of an alleged offense, from which they have formed fixed and positive opinions as to the guilt of the defendant that still remain with them, and who state on examination that they then have no doubt of the defendant's guilt, are not qualified jurors, although they believe, and express their belief, that they can fairly try the case upon the testimony produced.

Appeal from Rush district court; J. E. ANDREWS, judge. Opinion filed February 11, 1899. Reversed.

*W. T. Clark,* county attorney, and *D. A. Banta,* for The State.

·*H. Fierce, G. P. Cline, G. R. McKee, J. W. McCormick,* and *S. I. Hale,* for appellant.

The opinion of the court was delivered by

JOHNSTON, J.: In an information Al. Start was charged with deliberate and premeditated murder, and at the trial he was convicted of manslaughter in the fourth degree. In his appeal many errors are assigned, but the controlling one is based on the rulings of the trial court in impaneling the jury. Ten of the persons called as jurors were challenged by the defendant, and although it appears that they had formed and expressed opinions as to the homicide and guilt of the appellant the challenges were overruled. Some of them held only the opinion that the defendant had killed Peter Herman, and had no fixed opinion as to whether it was purposely done; but several of them held positive and fixed opinions not only of the killing but also as to the guilt of the defendant. They

The State v. Start.

had heard and read elaborate and detailed accounts of the homicide, from which they had formed well-settled opinions as to material facts in the case. Jurors were held to be qualified who stated on examination that their minds were already made up as to the guilt of the defendant, and that they had strong and fixed opinions which would remain with them until removed by evidence. Others stated that they believed what they had heard and read of the case, and had then no doubt of the truth of the statements or of the guilt of the defendant. Most of them expressed the belief that they could fairly try the case upon the testimony; but however honest and conscientious these men may be, they cannot be regarded as impartial jurors. Their minds, having been made up, were to a certain extent closed against the testimony offered in opposition to the opinion entertained; or, at least, the settled opinions which they entertained would naturally combat the testimony which defendant might offer, and would in a degree neutralize its force.

The presumption of innocence with which the law clothes the defendant was of little avail so far as these jurors were concerned, for they each came to the consideration of the case with the settled conviction that he was guilty—an opinion which they would hold until he proved his innocence. An opinion that Herman was killed by a bullet discharged from a revolver in the hands of the defendant is hardly sufficient to disqualify a juror, as the record indicates that there was no real controversy on this point. Defendant claims that if Herman was killed by a bullet discharged from his revolver it was wholly accidental; but some of the jurors, as we have seen, held positive and fixed opinions that he was guilty of the

17—60 KAN.

charge of murder.   There is no disposition to make a rule so rigid that it will bar intelligent, reading men from jury service, and it has uniformly been held that mere impressions gained from reading the newspapers, which are not of a fixed and positive character, will not render those holding them unfit for jurors. (*The State v. Medlicott*, 9 Kan. 257.)   On the other hand, it is well· settled that those who come to the trial of a cause with opinions of a fixed and positive character as to the guilt of the defendant are not qualified jurors, although they may state that they believe they could give the accused a fair and impartial trial.   (*The State v. Beatty*, 45 Kan. 492, 25 Pac. 889 ; *The State v. Snodgrass*, 52 id. 174, 34 Pac. 750 ; *The State v. Vogan*, 56 id. 61, 42 Pac. 352 ; *The State v. Beuerman*, 59 id. 586, 53 Pac. 874.)

The difficulty of securing a jury because so many of the residents of the county in which the offense was committed are foreigners who do not understand the English language is urged as a reason why the rulings of the court should be overlooked, but this consideration cannot weigh, as under the constitution every one charged with a criminial offense has a right to be tried by an impartial jury, and the statute expressly provides that "it shall be a good cause of challenge to a juror that he has formed or expressed an opinion on the issue of any material fact to be tried." (Gen. Stat. 1897, ch. 102, § 203 ; Gen. Stat. 1889, ¶ 5270.) If competent jurors cannot be found in that county, ample provision is made by which the defendant can procure the removal of the cause to a county where fair and impartial jurors may be secured.

For the error mentioned the judgment of the district court will be reversed and the cause remanded for a new trial.