No. 38,900

STATE OF KANSAS, *Appellee,* v. WAYNE C. ALDRICH and VIOLET M. CHAPPELL, *Appellants.*

(255 P. 2d 1027)

Opinion filed April 11, 1953.

*E. Lael Alkire* and *Clark V. Owens,* both of Wichita, argued the cause, and *Wendell Godwin,* of Wichita, was with them on the briefs for the appellants.

*Keith Sanborn,* deputy county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, *Paul E. Wilson,* assistant attorney general, and *Warner Moore,* county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Wayne C. Aldrich and Violet M. Chappell were jointly charged in an information containing two counts, one of felonious assault with intent to kill, maim, ravage or rob Skyler C. Rice, as defined by G. S. 1949, 21-431, the other of robbery in the first degree by taking property of Rice, as defined by G. S. 1949, 21-527. They were tried by a jury which returned a verdict of guilty on both counts. Their motion for a new trial was denied and they were sentenced as provided by statute. Thereafter they perfected an appeal specifying error in particulars which are later discussed.

I

At the conclusion of the state's opening statement and again at the close of the state's case in chief, appellants moved that the state be required to elect upon which of the two counts it would proceed. Both motions were denied. Appellants contend the rulings were erroneous and prejudicial. The theory advanced is that the offense of assault with intent to rob is necessarily included in the offense of robbery by force and that one cannot be guilty of two offenses arising from the same acts; that the assault with intent to rob is only a step in the completion of the crime of robbery, and actually only one crime is committed, and, upon general principles it should not be split into separate parts and the supposed offender prosecuted for commission of those separate parts, in support of which our attention is directed to *The State v. Colgate,* 31 Kan. 511, 3 Pac. 346; *The State v. Parkhurst,* 74 Kan. 672, 87 Pac. 703; *State v. McLaughlin,* 121 Kan. 693, 249 Pac. 612, which tend to support the theory. A contrary conclusion may be drawn from *State v. Seward,* 163 Kan. 136, 181 P. 2d 478; *id.* 164 Kan. 608, 191 P. 2d 743, where it was held proper to charge in separate counts of one information the crime of forgery and the crime of obtaining property by false pretenses by use of a check, from *State v. Long,* 129 Kan. 379, 282 Pac. 583, where it was contended that accused could not be tried for robbery committed while escaping jail, and from *State v. Neff,* 169 Kan. 116, 218 P. 2d 248; cert. denied 340 U. S. 866, 71 S. Ct. 90, 95 L. Ed. 632, where in different counts two crimes of murder were charged and where, among other things, it was held:

"Notwithstanding some general rules are recognized as guides in determining the question of proper joinder of offenses it is difficult, if not impossible, to lay down a comprehensive rule which will adequately cover every possible contingency. This court is committed to the modern and safer rule of determining the question on the peculiar facts of each case as it arises.

"Where a state's case in chief contains evidence from which it reasonably may be inferred the offenses charged in two counts are part of a comprehensive plan, inspired by the same purpose, the product of the same motive, and that defendant's objective could be fully realized only by the commission of both offenses, a motion to require the state to elect on which count it will rely for conviction is properly overruled." (Syl. ¶¶ 3, 4.)

While we are inclined to the opinion the trial court did not err, if there were error it was not prejudicial. Notwithstanding the appellants were found guilty of both counts, insofar as Violet M. Chappell is concerned the court sentenced her to the state industrial farm for women, there to be confined according to law and subject to the provisions of law. Stated another way, she would have received the same sentence had she been convicted of only one of the two offenses. Insofar as Aldrich is concerned the trial court found that he had been convicted of three previous felonies and on the instant verdict sentenced him to the state penitentiary for a term of not less than fifteen years on each count, but provided that the two sentences should run concurrently and not consecutively. The result is that his term of confinement is no greater than had he been convicted of one offense only.

II

Appellant Aldrich also complains that the trial court erred in admitting in the state's case in chief, evidence of his previous convictions of felonies. After directing attention to the rule of *State v. Palmer*, 173 Kan. 560, 566, 251 P. 2d 225, that evidence that the accused has committed another crime independent of and unconnected with the one on trial is not admissible and that it is not competent to prove one crime by proving another, and to the exception to that rule that such evidence, under proper instructions, may be admitted when relevant to show intent, guilty knowledge, motive, plan or system of operation or inclinations and tendencies, all of which are treated in *State v. Owen*, 162 Kan. 255, 176 P. 2d 564, appellant argues that the state's evidence as to such prior convictions does not fall within the exceptions to the rule and its admission was therefore erroneous and prejudicial. In expanding his argument appellant cites many of our cases wherein the previ-

ous offenses were similar to the offense of which the accused was being tried and to other cases where the offenses were dissimilar. We shall not review these cases. In *State v. Owen*, supra, this court quoted approvingly from 22 C. J. S. 1087, Criminal Law, § 682, to the effect that questions regarding the admissibility of such evidence are within the discretion of the trial court whose rulings will not be interfered with on review unless that discretion is abused or unless it is clear the questioned evidence has no bearing on any of the issues involved in the charge. The record as abstracted is replete with objections. In some instances references are made to exhibits which are not well identified. Summarily stated, however, the state attempted to show three previous convictions, but only two were admitted and our discussion is limited to them. The first pertained to a conviction in Kansas in 1929 of the crime of robbery in the first degree and of the crime of assault with a deadly weapon. The other pertained to a conviction in the United States District Court of Georgia in the year 1944 of the crime of assault with intent to commit murder. It is not debatable that these offenses were not similar in character to the offenses for which Aldrich was being tried. The abstract discloses that the trial court in overruling objection to the evidence stated that the evidence would be admitted, not for the purpose of discrediting the defendant or as any evidence of his guilt or innocence but solely for the purpose of showing mode of operation, scienter, intent and malice. The trial court's instructions to the jury are not included in the abstract and we are not warranted in assuming that any instruction incorrectly advised the jury as to the force and effect of the evidence as to prior convictions. See generally *State v. Fannan*, 167 Kan. 723, 207 P. 2d 1176, as bearing on the contention just discussed.

## III

Appellants contend that the trial court erred in refusing to obtain professional advice in establishing the competency of the witness Rice, who was the person allegedly assaulted and robbed. After Rice was called as a witness and had identified himself, appellants raised the question that he was incompetent to testify and requested the trial court to determine whether he should be permitted to testify. At that time the trial court's attention was directed to a stipulation between attorneys for the state and for the defendant that on July 25, 1922, Rice had been adjudged insane in the State

of Indiana and committed to a state hospital there; that Rice was diagnosed to be an individual afflicted with and suffering from manic depressive psychosis; that Rice remained a patient at the hospital until he left about April 18, 1947, and that he did not return thereafter. Before the witness was permitted to testify he was examined by the trial court and it appeared that he knew his name, his middle initial, birth date and age, that he was testifying under oath, that it meant he was to state the truth to the best of his knowledge, that he believed in God, in telling the truth and would be punished if he did not do so. He stated that he remembered he had been in the Indiana hospital; that he left and went to Oklahoma, managed his own affairs and lived on his earnings; that he obtained a job in Wichita and ran an elevator at a hotel. The trial court concluded he was competent to testify and he was permitted to do so. Appellants direct attention to the rule that once a mental condition is shown to have existed it will be presumed to have continued if it is of a chronic or permanent nature (31 C. J. S. 740) and argue, in effect, that expert testimony was required to show the witness's present condition. The question of conclusiveness of an adjudication of insanity was treated in *Toepffer v. Toepffer,* 151 Kan. 924, 101 P. 2d 904, where competency of a party to the action was involved, and it was held that such an adjudication creates a presumption of continuing insanity but the presumption is one which may be rebutted by evidence of a subsequent sound condition of mind at a particular time. The question arose with respect to the competency of a witness in *Holler v. Dickey Clay Mfg. Co.,* 157 Kan. 355, 139 P. 2d 846, 148 A. L. R. 1131, and it was there held:

"While an adjudication of insanity creates a presumption of continuing insanity that presumption may be rebutted by competent evidence of a sound condition of mind at a particular time; under G. S. 1935, 60-2805, a person may be competent as a witness if he has sufficient understanding to apprehend the obligation of an oath, and is capable of giving a correct account of the matters which he has seen, heard or experienced, in reference to the questions at issue, notwithstanding that at the time of his production as such witness he may be an inmate of some institution for the insane.

"The determination of the mental competency of a witness at the time he is produced for examination is addressed largely to the discretion of the trial court and its determination of such question will not be disturbed except for abuse of discretion." (Syl. ¶¶ 2, 3.)

And see also annotation on mental condition as affecting competency. (148 A. L. R. 1140.)

Under the last cited cases we think it was proper for the trial

court to make the examination and inquiry, and to determine that, under the facts developed, Rice was a competent witness. There is no showing of any abuse of discretion by the trial court or of any error.

## IV

Appellants complain that the trial court erred in refusing to permit their counsel to examine a "report" used by the state's witness Wheeler "to refresh his memory." They argue their request to examine violates the rule that any writing used by a witness to refresh his memory must be produced and shown to the adverse party if he requests it, and such adverse party may, if he chooses, cross-examine the witness thereon and cite in support an annotation appearing in 125 A. L. R. 19 (l. c. 194) and the court's opinion in *Railroad Co. v. Hays,* 8 Kan. App. 545, 54 Pac. 322. Appellants do not point out where the court's refusal prejudiced them.

The state concedes the rule contended for is well supported but that the cross-examination of the witness as to the time of making the report and the details with reference to it were quite extensive and whether the testimony was recollection refreshed from the report or a mere reading of the report was gone into thoroughly. Inferentially it is contended there was no prejudicial error. The manner in which the abstract is prepared is not conducive to a very clear understanding. The witness Wheeler testified that he went to the place where the alleged offenses were committed, saw two officers talking with Rice, the complaining witness and went inside the apartment. He identified a large number of exhibits, stated he stayed in the apartment about half an hour, went to another place where he had a conversation with appellant Aldrich but did not arrest him, and over objection testified to what Aldrich said about his previous criminal record. The abstract then states that Wheeler on numerous occasions referred to his notes which he stated consisted of his official police report. At this stage appellant's counsel requested permission to see the report and examine its contents "since the witness Wheeler seemed to be doing most of his testifying from said report." Whatever further may have been developed is not shown—it is merely stated the request was refused. It may be conceded for present purposes the request should have been allowed, but it does not follow the refusal was prejudicially erroneous. It appears rather certain that the witness did not identify the various exhibits by any reference to his report,

and in any event there is no controversy about them for they were articles found in the apartment. Apparently the references to the official police report pertained to Aldrich's previous criminal record. It is not necessary that we detail other oral and documentary evidence as to that criminal record for the fact is that Aldrich as a witness in his own behalf testified at length concerning his record, the accusations against him and the result of trials in which he was the accused. Under all of the circumstances we hold the error was technical and did not affect the substantial rights of the appellants and that the verdict and judgment may not be reversed for the reason just considered. See G. S. 1949, 62-1718.

V

Appellant Aldrich contends that the trial court erred in admitting in evidence some enlarged colored photographs of his hands taken the morning after the alleged assault, and introduced apparently to show the condition of his hands. The burden of his argument is that he was not advised as to his rights and was not told the photographs would be used against him. In support of his contention, Aldrich cites no authority. We shall not pursue the contention as made for his abstract of the record does not disclose any objection to the reception in evidence of the photographs for any reason whatever.

VI

Appellants complain of the trial court's refusal to give a requested instruction, the substance of which was that it had been stipulated that Rice, a witness for the state was adjudged insane in 1922 and was committed to an Indiana hospital where he remained until 1947 and that so far as any court proceedings were concerned, he had not been restored; that the stipulation established the fact Rice was insane "all of which gives rise to a presumption that he has, since his adjudication, remained insane from 1922 until now." The remainder of the requested instruction dealt with the manner in which his testimony was to be considered. In lieu of the requested instruction the court gave one referring to the stipulation—that Rice had been adjudged insane and committed to the hospital "and that he has not, so far as court proceedings are concerned, been restored." The remainder of the instruction was in substance the same as that requested by the appellants. Appellants' contention is that as the instruction given did not refer to the presumption of continu-

ance of Rice's insanity, the jury received a wrong impression so that appellants were deprived of the legal effect of the presumption, and as the state's case rested largely on Rice's testimony, the failure of the court to include the presumption was erroneous. No authority is cited in support of the contention. The state argues that the question of the competency of Rice to testify was for the court, and it having been determined that he was competent, the question of continuation of his state of insanity was settled and the instruction given adequately covered. We agree with the state's contention that whether Rice was a competent witness was for the court. In any event, we find it difficult to say that the instruction as given, insofar as proper, was not in substance the same as the one requested. See *State v. Mendenhall*, 133 Kan. 664, 675, 3 P. 2d 489.

## VII

And lastly we consider appellants' contention that the jury was furnished with incomplete forms for returning a verdict, to their prejudice. Five forms of verdict were furnished for each appellant. In substance they were as follows: (1) Guilty of first degree robbery; (2) guilty of assault and battery with intent to kill, maim, ravish or rob; (3) guilty of maiming, wounding, disfiguring or causing bodily harm; (4) guilty of assault and battery; and (5) which reads:

"We, the Jury, impaneled and sworn in the above entitled case, do upon our oath find the defendant, Wayne C. Aldrich (Violet M. Chappell), not guilty altogether."

It is here remarked that the jury returned as its verdicts, forms 1 and 2 as against each appellant. Under the circumstances the result is equivalent to a finding of not guilty of the lesser and included offenses covered by forms 3 and 4. See *The State v. McNaught*, 36 Kan. 624, 14 Pac. 277. Appellants' complaint is that, under the forms 1, 2 and 5 submitted, there was no way that the jury could have found either appellant guilty on one count and not guilty on the other, and that possibly some member of the jury was coerced into finding appellants guilty on both counts to avoid a possible acquittal on one count, and our attention is directed to a quotation from 53 Am. Jur. 716, that where the judge assumes to submit forms of verdict, he should prepare forms which will meet all requirements of the case, not omitting any form which may

properly be returned on any of the issues, and to a quotation from 23 C. J. S. 874, that it is erroneous to give a form of verdict which does not permit the jury to find for the accused on one or more counts. The state answers that a verdict is sufficient in form if it expresses the decision of the jury on the issues submitted so as to enable the court to render a judgment thereon, citing 53 Am. Jur. 716. Discussion of those contentions is not necessary. We cannot and do not approve a form of verdict such as No. 5 above, but the fact it was used cannot be said to be prejudicially erroneous here. While the abstract discloses that the court stated in a concluding paragraph of its instructions that it had prepared five forms of verdict for each accused, it does not disclose all of the instructions to the jury and we are therefore unaware of what it may have otherwise advised the jury as to its verdict. The abstract does not disclose and the appellants do not contend that they made any objection to the forms of verdict submitted or that they requested other or different or further forms to be submitted, or that they objected to any instruction to the jury, or that on return of the verdict as rendered that they made any objection. Whether deliberately so or not it seems apparent the appellants were content to leave it to the jury to determine whether they were wholly guilty or wholly innocent. In our opinion the appellants, by their failure to make timely objection to the forms of verdict submitted or to ask for other forms, waived any error there may have been.

In view of what has been said it follows the judgment of the trial court should be and it is affirmed.

WEDELL, J. (concurring specially): I concur in the result.